A11A2038. IN THE INTEREST OF A. R. K. L., a child.
(726 SE2d 77)

PHIPPS, Presiding Judge.

The mother of A. R. K. L. filed a petition in juvenile court to terminate the parental rights of the child's father. The juvenile court granted the petition, and the father appeals. He contends that (1) the juvenile court lacked subject matter jurisdiction to rule on the petition because the petition was actually a disguised custody matter; (2) the juvenile court lacked subject matter jurisdiction to rule on the petition because the petition was actually a disguised adoption matter; and (3) the juvenile court erred in denying his motion for a continuance. For the reasons that follow, we affirm.

The record reveals that the parents married in September 2002. A. R. K. L. was born on March 28, 2004. And in April 2007, the parents divorced. Pursuant to the divorce decree, the mother was granted sole physical custody of A. R. K. L. and the parents were granted joint legal custody. The father was ordered to pay child support in the amount of $650 per month. The divorce decree gave the father visitation rights. But on January 18, 2011, the mother filed a petition to terminate the father's parental rights, citing the father's inability to provide support for A. R. K. L. and his failure to have any contact with the child.

The father had failed to visit A. R. K. L. for nearly two years before the filing of the termination petition and had also failed to pay child support for nearly a year and a half. The father asserted in his appellate brief that he had not visited the child because he agreed to have no contact with the child, the mother, and the stepfather in exchange for the dismissal of criminal charges. At the termination hearing, however, the father testified that he had not sought visitation with the child for fear of violating the conditions of his probation on account of false accusations.

In the termination petition, the mother alleged that the father's actions indicated that he had abandoned the child and was an unfit parent. The mother's petition to terminate the father's parental rights was filed pursuant to OCGA § 15-11-94.[1] Following a hearing

---

[1] OCGA § 15-11-94, pertinently provides:

(a) In considering the termination of parental rights, the court shall first determine whether there is present clear and convincing evidence of parental misconduct or inability as provided in subsection (b) of this Code section. If there is

on March 24, 2011, the juvenile court granted the mother's petition to terminate the father's parental rights.

1. The father contends that the juvenile court lacked subject matter jurisdiction to rule on the termination petition filed by the mother because the petition was actually a disguised custody matter

---

clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home. If the court finds clear and convincing evidence of the circumstance provided in paragraph (5) of subsection (b) of this Code section, the court shall presume that termination of parental rights is in the best interest of the child.

(b) Except as provided in subsections (e) through (h) of Code Section 15-11-96, the court by order may terminate the parental rights of a parent with respect to the parent's child if:

. . .

(3) The parent has abandoned the child or the child was left under circumstances that the identity of the parent is unknown and cannot be ascertained despite diligent searching, and the parent has not come forward to claim the child within three months following the finding of the child;

(4) (A) The court determines parental misconduct or inability by finding that:

(i) The child is a deprived child, as such term is defined in Code Section 15-11-2;

(ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived;

(iii) Such cause of deprivation is likely to continue or will not likely be remedied; and

(iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.

(B) In determining whether the child is without proper parental care and control, the court shall consider, without being limited to, the following:

. . .

(iii) Conviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship;

(iv) Egregious conduct or evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature;

(v) Physical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect of the child or of another child by the parent;

. . .

(C) In addition to the considerations in subparagraph (B) of this paragraph, where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights:

(i) To develop and maintain a parental bond with the child in a meaningful, supportive manner;

(ii) To provide for the care and support of the child as required by law or judicial decree[.]

. . .

that could only be properly heard in superior court. We disagree.

"Jurisdiction is a question of law to which we apply a de novo standard of review."[2] Except where a termination petition is filed in connection with adoption proceedings, the juvenile court has exclusive original jurisdiction over actions involving termination of parental rights.[3] It is true that not every deprivation petition or petition for the termination of parental rights brought by one parent against another can be heard in a juvenile court.[4]

> Under the long-established rule that pleadings are to be construed according to their substance and function and not merely as to their nomenclature, being always mindful to construe such documents in a manner compatible with the best interest of justice, each deprivation petition must be judged on its own merits. If it appears from an analysis of the pleading that it is actually a disguised custody matter, then it is outside the subject matter jurisdiction of the juvenile courts.[5]

The Supreme Court of Georgia has held that "juvenile courts should not entertain deprivation proceedings brought by a *non-custodial parent to obtain custody* from a custodial parent."[6]

The father argues that the superior court had jurisdiction over the issue of terminating his parental rights because the superior court presided over his divorce from the child's mother and over a later modification matter in which the court issued a temporary order suspending his rights to visitation and custody because he was incarcerated. The temporary order provided that should the father resolve his incarceration, he may petition the court to address visitation in an accelerated manner. But the father never petitioned the superior court to address visitation in that case, which he filed. And he has failed to show how permission granted to him by the superior court to petition for visitation in a superior court case could override the express statutory provision which gives the juvenile court exclusive jurisdiction over termination of parental rights actions that are not in connection with adoption proceedings.[7]

Here the petition was filed, not by the noncustodial parent, but by

---

[2] *In the Interest of C. L. C.*, 299 Ga. App. 729, 732 (1) (683 SE2d 690) (2009) (punctuation and footnote omitted).

[3] OCGA § 15-11-28 (a) (2) (C); *In the Interest of K. N. C.*, 264 Ga. App. 475, 479 (1), n. 6 (590 SE2d 792) (2003).

[4] *In re M. C. J.*, 271 Ga. 546, 548 (523 SE2d 6) (1999).

[5] Id. (citations and punctuation omitted).

[6] Id. (citation and punctuation omitted; emphasis in original).

[7] OCGA § 15-11-28 (a) (2) (C); *In the Interest of K. N. C.*, supra.

the parent who already had been awarded sole physical custody of the child. Moreover, the termination petition dealt specifically with factors relating to the father's inability to provide proper care and support for A. R. K. L. such that his parental rights should be terminated, and the juvenile court considered as much.[8] The juvenile court properly exercised jurisdiction over the termination proceedings.[9]

2. The father contends that the juvenile court lacked subject matter jurisdiction to rule on the termination petition because the petition was actually a disguised adoption matter that could be properly heard only in superior court. We disagree.

As previously stated, except where a termination petition is filed in connection with adoption proceedings, the juvenile court has exclusive original jurisdiction over actions involving termination of parental rights. In *H. C. S. v. Grebel*,[10] the Supreme Court of Georgia held that we erred in holding that where a petition for termination of the rights of a putative father of an illegitimate child specifically stated that it was in pursuance of the petitioners' prospective adoption of the child, the petition was not "in connection with adoption proceedings" within the meaning of OCGA § 15-11-5 (a) (2) (C).[11] In *In the Interest of B. G. D.*,[12] we found that the juvenile court lacked jurisdiction to consider a petition for termination of a putative father's parental rights because the termination was sought "in connection with" an adoption proceeding.[13] There, the evidence showed that a mother gave up her newborn daughter for adoption to a couple who attended the child's birth, and a termination petition was filed in juvenile court by a child placement agency.[14]

In his brief, the father states that he "believes the real reason the Petition was filed in juvenile court is because [the mother] wants her new husband to adopt [the] child." He argues that because the evidence showed that the stepfather desires to adopt A. R. K. L., the petition was filed in pursuance of an adoption. However, the stepfather's mere expressed desire to adopt A. R. K. L. (some time in the future) is not sufficient for this court to conclude that the petition was filed in connection with an adoption proceeding.[15] There was no

---

[8] See OCGA § 15-11-94.

[9] *In the Interest of K. E. P.*, 269 Ga. App. 700, 701-702 (1) (605 SE2d 114) (2004); *In re M. C. J.*, supra.

[10] 253 Ga. 404 (321 SE2d 321) (1984).

[11] Id. at 406 (1).

[12] 224 Ga. App. 124 (479 SE2d 439) (1996).

[13] Id. at 125 (1).

[14] Id. at 124-125.

[15] *In the Interest of C. D. C.*, 230 Ga. App. 237 (1) (495 SE2d 872) (1998) (jurisdiction in juvenile court upheld because no adoption proceeding in progress and action was "merely a termination of parental rights so that . . . the children may be placed for adoption at some time

evidence that an adoption petition was pending at the time the petition was filed.[16] The petition did not allege that it was filed in connection with adoption proceedings. Rather, the petition, which stated that the father had failed to provide for the support of the child and failed to have any contact with the child, alleged grounds sufficient for a termination.[17] Accordingly, the juvenile court properly exercised jurisdiction over the termination proceedings.[18]

3. The father contends that the juvenile court abused its discretion in denying his motion for a continuance because his attorney did not have sufficient time to prepare for the termination hearing.

> A trial court's decision to grant or to deny a continuance will not be disturbed absent abuse of discretion. . . . [T]he party seeking a continuance must show due diligence.[19]

Here, on January 20, 2011, a summons was personally served upon the father. The summons informed the father that a petition to terminate his rights to A. R. K. L. had been filed (and was attached to the summons), that a hearing was scheduled for March 24, 2011, and that he had the right to a court-appointed attorney if he could not afford one. The last sentence of the summons instructed the father that "[i]f you want a lawyer appointed to represent you, you must let the Court or officer of this Court handling this case know you want a lawyer immediately." The father submitted an application for a court-appointed attorney on March 11, 2011. On March 14, 2011, the court appointed an attorney to represent the father. The father filed a motion for a continuance on March 23, 2011.

Given the father's delay in requesting court-appointed counsel and waiting until the day before the hearing to ask for a continuance, we find no abuse of discretion by the juvenile court judge.[20]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED MARCH 2, 2012 —
RECONSIDERATION DENIED MARCH 16, 2012.

*James R. Newton*, for appellant.

---

in the future").

[16] See id.

[17] OCGA § 15-11-94.

[18] *In the Interest of D. L. N.*, 234 Ga. App. 123-124 (1) (506 SE2d 403) (1998).

[19] *In the Interest of T. R.*, 270 Ga. App. 401-402 (1) (606 SE2d 630) (2004) (citations omitted); *In the Interest of C-J. N.*, 289 Ga. App. 423, 427-428 (3) (657 SE2d 329) (2008).

[20] *In the Interest of T. R.*, supra at 402 (1); *In the Interest of C-J. N.*, supra.

*Clark & Williams, Jason R. Clark, Frances W. Dyal,* for appellee.